```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ROLANDO CAMUNAS,                  :    CIVIL ACTION
                                  :    NO. 21-1005
        Plaintiff,                :
                                  :
     v.                           :
                                  :
NATIONAL REPUBLICAN SENATORIAL    :
COMMITTEE,                        :
                                  :
        Defendant.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              May 26, 2021

**I.   INTRODUCTION**

In the instant action, Plaintiff Rolando Camunas alleges the National Republican Senatorial Committee ("NRSC") violated subsections 227(b) and 227(c) of the Telephone Consumer Protection Act ("TCPA") by sending him unsolicited text messages. Presently before the Court is the NRSC's motion to dismiss the Amended Complaint for lack of subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), and failure to state a claim, see Fed. R. Civ. P. 12(b)(6).

Because Camunas adequately pleads that he has standing to bring the instant action, the Court will deny the motion to dismiss for lack of subject matter jurisdiction. However, because the Amended Complaint does not plausibly allege that the NRSC, rather than another person or entity, sent the text

messages at issue or that the NRSC used an automatic telephone dialing system to do so, the Court will grant the motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6). Because it is not clear that amendment would be futile, the Court will afford Camunas an opportunity to file a second amended complaint.

## II. BACKGROUND[1]

Camunas is a Philadelphia resident whose cell phone number has been on the federal Do Not Call Registry since June 2015. The NRSC is a political organization that raises money for Republican senatorial candidates. Although Camunas never consented for the NRSC to call or text him, he received at least six text messages from the NRSC in 2020, which he describes as "generic and obviously pre-written." Am. Compl. ¶ 21, ECF No. 14. The NRSC's website states that its opt-in messaging program communicates using "recurring autodialed marketing messages." Am. Compl. ¶ 22.

Camunas alleges the NRSC violated subsections 227(b) and 227(c) of the TCPA, which "proscribes abusive telemarketing practices." Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1167 (2021). "Congress passed the TCPA to address 'the proliferation of intrusive, nuisance calls' to consumers and businesses from

---

[1] At the motion to dismiss stage, the Court accepts all well-pled factual allegations as true. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

2

telemarketers." Id. (quoting note following 47 U.S.C. § 227). Subsection 227(b) of the Act prohibits making certain calls "using any automatic telephone dialing system" without "the prior express consent of the called party." See 47 U.S.C. § 227(b)(1)(A). Subsection 227(c) creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed" under the subsection, which govern the Do Not Call Registry. See id. § 227(c)(5).

Camunas filed the instant action in March 2021. The NRSC moved to dismiss the Complaint for lack of standing and failure to state a claim. In lieu of opposing the NRSC's motion, Camunas filed an Amended Complaint. The NRSC now moves to dismiss the Amended Complaint.

**III. LEGAL STANDARD**

    **A.   12(b)(1)**

"[A] court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (citing Fed. R. Civ. P. 12(b)(1)). Constitutional standing "is properly tested under Rule 12(b)(1)" and "may be challenged facially or factually." Thorne v. Pep Boys Manny Moe & Jack Inc., 980 F.3d 879, 885 (3d Cir. 2020). "A

facial challenge argues that the plaintiff's factual allegations cannot meet the elements of standing." Id. (citing Schering Plough, 678 F.3d at 243). In reviewing a facial challenge, the Court takes the plaintiff's factual allegations as true and views them in her favor. Id.

### B. 12(b)(6)

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing such a motion, the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from [the allegations] after construing them in the light most favorable to the non-movant." Conard v. Pa. State Police, 902 F.3d 178, 182 (3d Cir. 2018) (alteration in original) (quoting Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as

4

true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

**IV. DISCUSSION**

   **A.   12(b)(1)**

The NRSC first argues the Court must dismiss the Amended Complaint because Camunas fails to properly plead an injury-in-fact. This challenge is facial, rather than factual, in nature.

"The familiar elements of Article III standing require a plaintiff to have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Thorne, 980 F.3d at 885 (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016)). "Injury in fact is the '"foremost" of standing's three elements' . . . ." Id. (quoting Spokeo, 136 S. Ct. at 1547). "To plead an injury in fact, the party invoking federal jurisdiction must establish three sub-elements: first, the invasion of a legally protected interest; second, that the injury is both 'concrete and particularized'; and third, that the injury is 'actual or imminent, not conjectural or hypothetical.'" Id. (quoting Spokeo, 136 S. Ct. at 1548) (citing Mielo v. Steak 'n Shake Ops., Inc., 897 F.3d 467, 479 n.11 (3d Cir. 2018)).

In support of its argument that Camunas lacks standing, the NRSC points to the Eleventh Circuit's decision in Salcedo v.

5

Hanna, 936 F.3d 1162, 1169 (11th Cir. 2019), which held that receipt of a single text message did not constitute an injury for purposes of the TCPA. However, several other circuits have held that the receipt of unwanted text messages can suffice to demonstrate an injury-in-fact. See Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 463 (7th Cir. 2020) (Barrett, J.) ("[U]nwanted text messages can constitute a concrete injury-in-fact for Article III purposes."), cert. denied, No. 20-209, 2021 WL 1521010 (U.S. Apr. 19, 2021); Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 88 (2d Cir. 2019) (holding that the plaintiffs' "receipt of the unsolicited text messages, sans any other injury, is sufficient to demonstrate injury-in-fact"); Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted a concrete injury under the TCPA).

The NRSC also points to a 2017 decision from the District of New Jersey dismissing a TCPA suit for lack of standing. See Zemel v. CSC Holdings LLC, No. 16-4064-DEA, 2017 WL 1503995, at *1 (D.N.J. Apr. 26, 2017) (Zemel I). The plaintiff in Zemel I, who brought a putative class action, alleged he had received a total of three unsolicited text messages. Id. The court concluded the plaintiff lacked standing because the text messages did not constitute an alleged injury-in-fact for purposes of Article III standing. Id. at *5.

6

The NRSC's citation to Zemel I is misleading. The case was decided shortly before the Third Circuit's decision in Susinno v. Work Out World Inc., 862 F.3d 346, 348 (3d Cir. 2017), which held that a recipient of a single robocall may have standing to sue under the TCPA. The Third Circuit reasoned that the alleged injury was sufficiently concrete because Congress squarely identified the injury in the TCPA and because the harm was closely related to traditional claims for intrusion upon seclusion. Id. at 351. Therefore, by alleging receipt of a single unsolicited robocall, the plaintiff "alleged a concrete, albeit intangible, harm" under Supreme Court and Third Circuit precedent. Id. at 352.

After the Third Circuit issued its decision in Susinno, the plaintiff in Zemel I filed a new action. See Zemel v. CSC Holdings LLC, No. 18-2340-DEA, 2018 WL 6242484, at *1 (D.N.J. Nov. 29, 2018) (Zemel II). In its opinion ruling on a motion to dismiss the second action pursuant to Rule 12(b)(6), the court noted that it had dismissed the complaint in the first action for lack of standing and then stated, "[h]owever, a subsequent Third Circuit opinion held an allegation of a single call automatically satisfies Article III standing in a TCPA case." Id. (citing Susinno, 862 F.3d at 352). The court then proceeded to analyze the 12(b)(6) motion without addressing standing,

7

presumably because the court assumed Susinno had resolved the issue. See id. at *2-5.

The NRSC seeks to distinguish Susinno from the instant action by arguing that Susinno "involved a phone call and a one-minute prerecorded voicemail—not a small number of text messages" and still "required the plaintiff actually assert and plead an injury—such as nuisance and invasion of privacy." Def.'s Mot. Dismiss 7 n.5, ECF No. 15-1 (quotations and alterations omitted). This argument is unpersuasive. The plaintiff in Susinno averred that she was injured by the defendant calling her and leaving a one-minute prerecorded promotional offer on her voicemail. Susinno, 862 F.3d at 348. The Third Circuit agreed with the plaintiff "that in asserting 'nuisance and invasion of privacy' resulting from a single prerecorded telephone call, [the plaintiff's] complaint asserts 'the very harm that Congress sought to prevent,' arising from prototypical conduct proscribed by the TCPA." Id. at 351. (quoting First Am. Compl.) (citing Van Patten, 847 F.3d at 1043). The court therefore determined that it "need not address [the plaintiff's] additional arguments that her various tangible injuries provide alternative grounds for standing." Id. at 352 (emphasis added).

Here, Camunas similarly alleges he found the NRSC's unsolicited communication "annoying, disruptive, frustrating and

an invasion of his privacy." Am. Compl. ¶ 24. Camunas's allegations are very similar to those in Zelma v. Penn LLC, No. 19-8725, 2020 WL 278763, at *6 (D.N.J. Jan. 17, 2020), in which the district court determined that a plaintiff who alleged receiving six unsolicited text messages had standing to pursue a TCPA claim. Relying on Susinno, the court concluded that "Plaintiff's allegations of receiving six unsolicited text messages from an [automatic telephone dialing system] 'is the very injury [the TCPA] is intended to prevent.'" Id. (second alteration in original) (quoting Susinno, 862 F.3d at 351); see also Rando v. Edible Arrangements Int'l, LLC, No. 17-701(AMD), 2018 WL 1523858, at *3 (D.N.J. Mar. 28, 2018) (relying on Susinno to conclude that a plaintiff who alleged receiving "effectively unsolicited" text messages had standing to pursue a TCPA claim).

Here, too, Camunas plausibly alleges he suffered an injury. He also plausibly alleges that the injury is fairly traceable to the NRSC's conduct[2] and that a favorable judicial decision would

---

[2] In its Reply in support of the instant motion, the NRSC also argues Camunas fails to plausibly allege that his injury is traceable to the NRSC. See Def.'s Reply Supp. Mot. Dismiss 2 n.3, ECF No. 19-1 ("[W]hile Plaintiff makes conclusory allegations Defendant sent the texts in question, Plaintiff has still failed to include any factual content that actually links Defendant thereto."). However, "[a]n analysis of standing generally focuses on whether the plaintiff is the right party to bring particular claims, not on whether the plaintiff has sued the right party. The latter question goes not to standing and jurisdiction but to the merits of the claims themselves." Davis v. Wells Fargo, 824 F.3d 333, 338 (3d Cir. 2016).

9

redress the alleged injury. Therefore, the Court will deny the motion to dismiss for lack of subject matter jurisdiction.

**B. 12(b)(6)**

1. Subsection 227(b)

Next, the NRSC argues the Amended Complaint fails to state a claim under subsection 227(b) of the TCPA, which requires a plaintiff to establish that "(1) the defendant called a cellular telephone number; (2) using an [automatic telephone dialing system ("ATDS")]; (3) without the recipient's prior express consent." Smith v. Vision Solar LLC, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (quoting Zemel II, 2018 WL 6242484, at *3).[3] The NRSC does not dispute that Camunas plausibly alleges he did not consent to receive the messages at issue. However, it avers that the Amended Complaint contains only conclusory allegations that (a) the NRSC sent the messages in question and (b) that it used an ATDS to do so.

**a. Whether the NRSC Sent the Messages**

The Amended Complaint states that the NRSC "sent text messages to [Camunas's] cell phone for the purpose of soliciting campaign donations." Am. Compl. ¶ 20. The pleading identifies the dates and times on which six such messages were sent. Am.

---

[3] The parties do not dispute that this prohibition applies not only to phone calls, but also to unsolicited text messages. In Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1168 n.2 (2021), the Supreme Court "assume[d] that it does without considering or resolving that issue."

10

Compl. ¶ 20. However, it does not quote or otherwise describe the content of the alleged messages in a way that indicates the NRSC, rather than another individual or organization, sent the messages. Nor does Camunas identify the phone number from which the messages were sent or allege that the messages came from a number associated with the NRSC.

The Court agrees with the NRSC that the Amended Complaint fails to plausibly allege that the NRSC sent the messages at issue and will therefore grant the motion to dismiss the subsection 227(b) claim pursuant to Rule 12(b)(6).

### b. Whether the NRSC Used an ATDS

The TCPA defines an ATDS as a piece of equipment with the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers." 47 U.S.C. § 227(a)(1). In Facebook, Inc. v. Duguid, 141 S. Ct. 1163 (2021), the Supreme Court considered whether the statute's definition "encompasses equipment that can 'store' and dial telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" Id. at 1167 (alteration in original) (quoting 47 U.S.C. § 227(a)(1)).

The plaintiff in Duguid challenged a Facebook security feature "that sends users 'login notification' text messages when an attempt is made to access their Facebook account from an unknown device or browser. If necessary, the user can then log

into Facebook and take action to secure the account." Id. at 1168. Facebook users "must provide and verify a cell phone number to which Facebook can send messages" in order to "opt in to this service." Id.

In Duguid, the plaintiff alleged that because this system had the capacity to store and dial telephone numbers, it was an ATDS within the meaning of the statute even though the system did not use a random or sequential number generator. Id. at 1171. The Supreme Court disagreed, concluding that the clause "using a random or sequential number generator" in the statute "modifies both 'store' and 'produce.'" Id. at 1173. Therefore, to qualify as an ATDS, "a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." Id. at 1167. Because Facebook's system did neither, it was not an ATDS. Id. at 1169.

To satisfy the ATDS element of the subsection 227(b) cause of action, "courts permit the allegation of an automatic system to be pled on information or belief, but require additional factual information, such as the absence of a relationship between the parties and the random nature of the automation device." Zemel II, 2018 WL 6242484, at *3 (quoting Norman v. Sito Mobile Sols., No. 17-2215, 2017 WL 1330199, at *3 (D.N.J. Apr. 6, 2017)) (citing In re Jiffy Lube Int'l, Inc., Text Spam

Litig., 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012)). "[A] bare allegation that defendants used an ATDS is not enough." Id. (collecting cases). Instead, "[a] plaintiff must provide 'at least some [] detail regarding the content of the messages or calls, thereby rendering the claim that an ATDS was used more plausible.'" Id. (second alteration in original) (quoting Aikens v. Synchrony Fin., No. 15-10058, 2015 WL 5818911, at *3 (E.D. Mich. July 31, 2015), R. & R. adopted, No. 15-CV-10058, 2015 WL 5818860 (E.D. Mich. Aug. 31, 2015)).

In cases involving text messages, "courts have considered the nature of the message, the length of the sending number, the number of messages, and the relationship between the parties." Id. at *4 (quoting Mogadam v. Fast Eviction Serv., No. SACV 14-01912(RNBx), 2015 WL 1534450, at *3 (C.D. Cal. Mar. 30, 2015)). With respect to the sending number, several courts have concluded that a "short code" number supports an inference of ATDS use. Id. at *3 (collecting cases).

The Zemel II decision from the District of New Jersey is instructive on this issue. See id. There, the court concluded that the plaintiff, who alleged he "began receiving unsolicited text messages to his wireless phone" from a "short code" phone number owned by the defendant "despite a lack of consent or prior relationship" "more than satisfie[d] his burden" of alleging that the defendant used an ATDS. Id. at *4 (citing In

13

re Jiffy Lube, 847 F. Supp. 2d at 1260); see also Davis v. D.R. Horton Inc., No. 19-1686-MN, 2020 WL 1244848, at *2 (D. Del. Mar. 16, 2020) ("Here, as in Zemel, plaintiff alleges that she received impersonal text messages and that they were sent using a vanity short code. Plaintiff further alleges that, upon and information and belief, defendant used an ATDS. That is enough to proceed at this stage of the litigation."), R. & R. adopted, No. 19-1686, 2020 WL 6042091 (D. Del. Oct. 13, 2020).

Here, the Amended Complaint alleges that the messages at issue were "generic and obviously prewritten" and that the NRSC's website describes using "recurring autodialed marketing messages" in its opt-in messaging program. Am. Compl. ¶¶ 21-22. The Amended Complaint also states that, "[u]pon information and belief, Defendant uses dialing technology, which calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers." Am. Compl. ¶ 30.

The Court concludes that the Amended Complaint does not plausibly allege that the NRSC used an ATDS to send the messages at issue. The pleading does not identify the specific content of the messages, nor does it identify the phone number from which the messages were sent or indicate whether that number was a short code. The Amended Complaint also contains no allegations about whether Camunas had a prior relationship with the NRSC. Further, the NRSC's alleged use of "recurring autodialed

14

marketing messages" in its opt-in messaging program, see Am. Compl. ¶ 22, does not necessarily mean that it uses an ATDS to communicate with parties, like Camunas, who did not consent to receive communications.

Although it is true that "before beginning discovery, a plaintiff will rarely, if ever, know the specific functionality of a system used by a defendant," Davis, 2020 WL 1244848, at *2, Camunas still must allege sufficient facts to "nudge[]" his claim "across the line from conceivable to plausible," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Camunas has failed to do so.[4]

### 2. Subsection 227(c)

Camunas also alleges the NRSC violated subsection 227(c) of the Act. To state a claim for a violation of this subsection, plaintiffs "must plead that (1) they receive[d] multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the [Do Not Call]

---

[4] The NRSC also avers that "just like the plaintiff in [Duguid], Plaintiff here alleges the list of phone numbers was already stored on the equipment and then dialed using an ATDS." Def.'s Mot. Dismiss 13; see also Def.'s Reply 6 (arguing that Camunas "has pleaded himself out of a cause of action under § 227(b) of the TCPA by raising the exact factual scenario the U.S. Supreme Court recently rejected").

However, it is unclear from the face of the Amended Complaint precisely how Camunas alleges the NRSC's system functions. See Am. Compl. ¶ 30 ("Upon information and belief, Defendant uses dialing technology, which calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers."). Therefore, the Court will not reach the NRSC's Duguid argument at this time.

15

List." Smith v. Vision Solar LLC, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (citing Huber v. Pro Custom Solar, LLC, No. 19-01090, 2020 WL 2525971, at *2 (M.D. Pa. May 18, 2020)).

Like Camunas's subsection 227(b) claim, this claim fails because the Amended Complaint does not plausibly allege that the NRSC sent the messages at issue. See supra Section IV.B.1.a. Absent factual allegations about the content of the messages or the phone number from which they were sent, Camunas cannot plausibly allege that the challenged messages were sent "by or on behalf of" the NRSC. See Smith, 2020 WL 5632653, at *3 (citing Huber, 2020 WL 2525971, at *2).[5]

---

5 During the telephone hearing on the instant motion, the NRSC clarified that it also seeks to dismiss the subsection 227(c) claim pursuant to Rule 12(b)(6) because it avers that political calls and text messages are exempted from the Do Not Call Registry.

The only comment the NRSC makes in its motion to dismiss that could be construed as advancing this argument occurs in a footnote to its injury-in-fact discussion. The footnote states: "In his Amended Complaint, Plaintiff, on multiple occasions, states he placed his number on the Federal Trade Commission's ("FTC") Do Not Call Registry. However, political calls—such as the calls in question here—are expressly exempt from the Registry." Def.'s Mot. Dismiss 4 n.2 (citations omitted). Again in its Reply brief, the NRSC references the argument only in a footnote, which states in part: "Notwithstanding Defendant alerting both Plaintiff and the Court that political calls and texts—such as the alleged texts here—are expressly exempted from the Registry's restrictions, Plaintiff continues to assert his § 227(c) claim without any discussion surrounding political calls and the Registry." Def.'s Reply 3 n.5.

Camunas argued at the hearing that the NRSC did not sufficiently raise this argument in its motion to dismiss, depriving him of the opportunity to respond. The Court agrees and therefore will not reach the issue here.

16

**V.     CONCLUSION**

For the foregoing reasons, the Court will deny the NRSC's motion to dismiss for lack of subject matter jurisdiction and will grant the motion to dismiss for failure to state a claim. Because it is not clear that amendment would be futile, the Court will afford Camunas an opportunity to file a second amended complaint. An order consistent with this memorandum will issue.