**BLANK ROME LLP**
Jeffrey N. Rosenthal
One Logan Sq., 130 N. 18th St.
Philadelphia, PA 19103
Telephone: (215) 569-5553
Facsimile: (215) 832-5553
Rosenthal-j@BlankRome.com

**HOLTZMAN VOGEL BARAN TORCHINSKY JOSEFIAK PLLC**
Jason B. Torchinsky *(admitted pro hac vice)*
Jonathan P. Lienhard *(admitted pro hac vice)*
Dallin B. Holt *(admitted pro hac vice)*
15405 John Marshall Highway
Haymarket, VA 20169
Telephone: (540) 341-8808
Facsimile: (540) 341-8809
JTorchinsky@holtzmanvogel.com
JLienhard@holtzmanvogel.com
DHolt@holtzmanvogel.com

*Attorneys for Defendant National Republican Senatorial Committee*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROLAND CAMUNAS,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL REPUBLICAN SENATORIAL COMMITTEE,<br><br>Defendant. | Civil Action No.: 2:21-cv-01005-ER |

**DEFENDANT NATIONAL REPUBLICAN SENATORIAL COMMITTEE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................1

I. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER RULE 12(b)(6) ....................................................................................................2

A. Plaintiff's *Second Amended Complaint* Fails to State a Claim Because It Still Lacks Plausible Facts Indicating that NRSC Used an ATDS ....................................................................................................2

1. First Allegation: Texts Were Impersonal, Generic and Pre-written....................................................................................................7

2. Second Allegation: Relatively High Volume of Text Messages ....................................................................................................9

3. Third Allegation: Some of the Texts Were from A "Toll-free Number," And Showed Signs of being from an "Institutional Sender"....................................................................................................10

4. Fourth Allegation: NRSC's Website Mentions "Recurring Autodialed Marketing Messages" With Respect to Its Opt-in Messaging Program ....................................................................................................11

B. Even if Plaintiff Pleaded Sufficient Facts Indicating NRSC Used an ATDS, Plaintiff Pleaded Additional Facts Pertaining to NRSC's Dialing System That Foreclose His Claim Under Section 227(b)...................13

C. Plaintiff's Do-Not-Call Claim Under § 227(c) Also Fails to State a Claim....................................................................................................16

CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Investor's Bus. Daily, Inc.*,
2018 U.S. Dist. LEXIS 216246 (C.D. Cal. Dec. 21, 2018) ....................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................... *passim*

*Barton v. Temescal Wellness, LLC*,
2021 U.S. Dist. LEXIS 42211 (D. Mass. Mar. 8, 2021)....................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3, 6, 12

*Brown v. Collections Bureau of Am., Ltd.*,
183 F. Supp. 3d 1004 (N.D. Cal. 2016) ....................10

*Davis v. D.R. Horton Inc.*,
2020 U.S. Dist. LEXIS 44977 (D. Del. Mar. 16, 2020) .................... *passim*

*DeCapua v. Metro. Prop. & Cas. Ins. Co.*,
2019 U.S. Dist. LEXIS 168061 (D.R.I. Sep. 30, 2019)....................14

*Dominguez v. Yahoo!, Inc.*,
2017 U.S. Dist. LEXIS 11346 (E.D. Pa. Jan. 27, 2017) ....................4

*Facebook, Inc. v. Duguid*,
141 S. Ct. 1163 (2021).................... *passim*

*Freidman v. Massage Envy Franchising, LLC*,
2013 U.S. Dist. LEXIS 84250 (S.D. Cal. June 13, 2013)....................8, 10, 11

*Gibson v. Owens*,
2018 U.S. Dist. LEXIS 50419 (D.N.J. Mar. 27, 2018)....................16

*Gragg v. Orange Cab Co.*,
942 F. Supp. 2d 1111 (W.D. Wash. 2013)....................7

*Hollander v. Brown*,
457 F.3d 688 (7th Cir. 2006) ....................14

*Hufnus v. Donotpay, Inc.*,
2021 U.S. Dist. LEXIS 118325 (N.D. Cal. June 24, 2021) ....................15

*Humphreys v. PPL Elec. Utils. Corp.*,
2014 U.S. Dist. LEXIS 154819 (E.D. Pa. Oct. 30, 2014)........................................................16

*Krantz v. Prudential Invs. Fund Mgmt. LLC*,
305 F.3d 140 (3d Cir. 2002)........................................................................................16

*La Boom Disco, Inc. v. Duran*,
__S. Ct. __, 2021 U.S. LEXIS 2021 (Apr. 19, 2021) ..............................................................5

*Mainstream Mktg. Servs. v. FTC*,
358 F.3d 1228 (10th Cir. 2004) ....................................................................................17

*Mann v. Brenner*,
375 F. App'x 232 (3d Cir. 2010) ....................................................................................2

*Mantha v. QuoteWizard.com, LLC*,
2020 U.S. Dist. LEXIS 45481 (D. Mass. Mar. 16, 2020)..................................................6, 8, 9

*McEwen v. Nat'l Rifle Ass'n of Am. et al.*,
2021 U.S. Dist. LEXIS 72133 (D. Me. Apr. 14, 2021) ..........................................................5

*Payne v. DeLuca*,
2006 U.S. Dist. LEXIS 89251 (W.D. Pa. Dec. 11, 2006)........................................................16

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ..........................................................................................5

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ..........................................................................................4

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014)..........................................................................................14

*Serban v. CarGurus, Inc.*,
2016 U.S. Dist. LEXIS 122066 (N.D. Ill. Sept. 8, 2016) ..........................................................8

*Sieleman v. Freedom Mortgage Corp.*,
2018 U.S. Dist. LEXIS 129698 (D.N.J. Aug. 2, 2018)..................................................11, 12

*Snow v. GE*,
2019 U.S. Dist. LEXIS 99760 (E.D.N.C. June 14, 2019)........................................................13

*Sojka v. DirectBuy, Inc.*,
35 F. Supp. 3d 996 (N.D. Ill. 2014) ................................................................................10

*Thomas v. Peterson's Harley Davidson of Miami, LLC*,
363 F. Supp. 3d 1368 (S.D. Fla. 2018) ..............................................................................8

*Timms v. USAA Fed. Sav. Bank*,
2021 U.S. Dist. LEXIS 108083 (D.S.C. June 9, 2021)....................12, 15

*Trumper v. GE Cap. Retail Bank*,
79 F. Supp. 3d 511 (D.N.J. 2014)....................6

*Zelma v. Burke*,
2017 U.S. Dist. LEXIS 1209 (D.N.J. Jan. 4, 2017)....................6, 7

*Zemel v. CSC Holdings LLC*,
2018 U.S. Dist. LEXIS 201917 (D.N.J. Nov. 29, 2018)....................6, 10

**Statutes**

47 U.S.C. § 227(a)(1)....................5

47 U.S.C. § 227(b)(1)(A)(iii)....................3

47 U.S.C. § 227(b)(2)....................17

**Other Authorities**

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 P2p All. Petition for Clarification*,
35 FCC Rcd. 6526 (2020)....................9, 17

16 C.F.R. § 310.4(b)(1)(iii)(B)....................17

16 C.F.R. § 310.6(a)....................17

47 C.F.R. § 64.1200(c)(2)....................17

47 C.F.R. § 64.1200(f)(9)....................17

Defendant, National Republican Senatorial Committee ("NRSC"), through its counsel, hereby moves that Plaintiff Roland Camunas's ("Plaintiff") *Second Amended Complaint* be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

**INTRODUCTION**

Even after three attempts to prepare a complaint that plausibly alleges viable claims under the Telephone Consumer Protection Act ("TCPA"), Plaintiff still falls short. On March 2, 2021, Plaintiff filed his initial *Complaint* alleging certain TCPA violations based on his purported receipt of unsolicited text message(s). ECF No. 1. After Defendant's *Motion to Dismiss*, ECF No. 11, highlighted numerous problems in the initial *Complaint*, Plaintiff voluntarily filed an *Amended Complaint* on April 16, 2021. ECF No. 14. This amended pleading addressed some—but not all—of the fundamental flaws Defendant identified. As such, on May 27, 2021, this Court dismissed the *Amended Complaint* for failure to state a claim under the TCPA. ECF No. 21. In so dismissing, this Court detailed what Plaintiff needed to properly assert his TCPA claims and gave him a rare *third* opportunity to try and get it right. *Id.* at 17. Despite this Court's patience and clear roadmap, however, Plaintiff's *Second Amended Complaint* still fails to plead valid claims under the TCPA.

Specifically, Plaintiff continues to allege—with little to no supporting facts—that Defendant improperly sent him text messages via an automatic telephone dialing system ("ATDS"). But Plaintiff has not and cannot overcome the harsh reality that Defendant's system simply falls *outside* the narrow ATDS definition recently espoused by the U.S. Supreme Court.[1]

[1] On April 1, 2021, the U.S. Supreme Court, in a 9-0 decision (with Justice Alito concurring in the judgment), issued the much-anticipated decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). In *Facebook*, the Supreme Court overturned the Ninth Circuit and ruled that the TCPA's prohibition on an ATDS extends only to those systems that use a "random or sequential number generator." *Id.* at 1167. As the High Court said, "[t]o qualify as an 'automatic telephone dialing system,' a device *must* have the capacity either to *store* a telephone number using a random or sequential generator or to *produce* a telephone number using a random or sequential number

Plaintiff has failed to state a claim under Rule 12(b)(6) because his *Second Amended Complaint* primarily contains only conclusory allegations; it lacks enough factual allegations to raise his right to relief above the "speculative level." More to the point, nothing would be accomplished by offering Plaintiff a *fourth* chance to get this right; he has already struck out. Indeed, in dismissing Plaintiff's *Amended Complaint*, this Court opted against ruling on NRSC's argument under *Facebook, supra*, at the time because "it [was] unclear from the face of the Amended Complaint precisely how Camunas alleges the NRSC's system functions." ECF No. 21 at 15 n.4. Rather than provide any additional clarity on NRSC's system in his *Second Amended Complaint*, however, Plaintiff instead repeated the exact same allegation. Critically, courts have seen fit to dismiss TCPA claims with prejudice where, as here, the *Facebook* test has not and cannot be met. This Court, therefore, should apply *Facebook* and, in so doing, dismiss Plaintiff's *Second Amended Complaint* with prejudice. So too is Plaintiff's Do-Not-Call claim equally foreclosed by his own allegations. Any attempt to allow yet *another* opportunity to plead would be futile. Not only has Plaintiff now had three bites at the proverbial apple, he has chewed it to the core. *Mann v. Brenner*, 375 F. App'x 232, 240 n.9 (3d Cir. 2010) ("Because Mann was permitted to [amend] twice before the present motions to dismiss were filed, we think the District Court was well within its discretion in finding that allowing Mann a fourth bite at the apple would be futile.").

## I. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER RULE 12(b)(6).

### A. Plaintiff's *Second Amended Complaint* Fails to State a Claim Because It Still Lacks Plausible Facts Indicating that NRSC Used an ATDS.

Federal Rule of Civil Procedure 8(a)(2) requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While "detailed factual

---

generator." *Id.* (emphasis added). As most modern systems do not have the capacity to generate random or sequential numbers, they do not—as a matter of law—fall under the TCPA's ambit.

allegations" are not required at this stage, this Court should still demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To wit, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Id.*

While the Court must accept all *factual* allegations as true, that "tenet . . . is inapplicable to legal conclusions." *Id.* Critically, *Iqbal* requires a plaintiff provide factual allegations that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. The claim must be more than conceivable and must instead be facially plausible. *Twombly*, 550 U.S. at 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] [] 'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). Here, as Plaintiff has failed to plead sufficient "factual content," he has presented no allegations that, taken as true, create the reasonable inference NRSC sent the messages in question using an ATDS. *Id.* Simply alleging "the mere possibility of misconduct," as Plaintiff has done, is simply insufficient to plead claims under the TCPA. *Id.*

The *Second Amended Complaint* alleges a violation of § 227(b) of the TCPA. *See* ECF No. 24 ¶¶ 55-66. A violation under the TCPA occurs when "any person within the United States . . . make[s] any call . . . *using any automatic telephone dialing system*. . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

As discussed in the Supreme Court's recent *Facebook* decision, TCPA plaintiffs must allege sufficient "factual content" demonstrating the defendant used an ATDS to place the calls to properly assert a Section 227(b)(1) claim. *Facebook*, 141 S. Ct. at 1167; *Iqbal*, 556 U.S. at 678. To qualify as an ATDS, the device used to place the call—or in this case, send the text[2]—"must have the capacity *either* to *store* a telephone number using a random or sequential [number] generator or to *produce* a telephone number using a random or sequential number generator." *Id.* (emphasis added); *see also Dominguez v. Yahoo!, Inc.*, 2017 U.S. Dist. LEXIS 11346, at *3-4 (E.D. Pa. Jan. 27, 2017), *aff'd*, 894 F.3d 116 (3d Cir. 2018) (an ATDS *must* use a random or sequential number generator to either store or produce the number in question). Simply put, if Plaintiff failed to properly allege NRSC used a "random or sequential number generator" to either "store" or "produce" the number in question, then he has unequivocally failed to properly allege the use of an ATDS—and thus failed to state a claim. *See id.* As will be demonstrated below, Plaintiff has failed to satisfy this threshold legal requirement for several independent reasons.

When this Court dismissed Plaintiff's *Amended Complaint* under Rule 12(b)(6), it focused much of its attention on the fact that Plaintiff failed to plead sufficient "factual content" to link the alleged messages to NRSC. ECF No. 21 at 10-11, 16. As such, Plaintiff spent the bulk of his *Second Amended Complaint* showing the NRSC sent the messages in question. ECF No. 24 ¶¶ 25-42. In focusing on *who* sent the messages—but not *how* the messages were sent—Plaintiff failed to appreciate that this Court also dismissed the *Amended Complaint* because he did not allege sufficient "factual content" that an ATDS was used to send the texts in question. ECF No. 21 at 11-15 ("The Court concludes that the Amended Complaint does not plausibly allege that the NRSC

[2] A text message is a "call" within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

used an ATDS to send the messages at issue."). In so doing, Plaintiff failed to correct his prior pleading deficiencies regarding the use of an ATDS, and has, once again, failed to state a claim under Section 227(b). *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("The district court's written order identified the defects in the First Amended Complaint and then permitted Rutman to amend its complaint once again. The Second Amended Complaint did not cure the deficiencies. The district court could reasonably conclude that further amendment would be futile and therefore did not abuse its discretion in denying leave to amend a second time.").

Of specific importance to analyzing Plaintiff's pleading failure—and preeminently important to the outcome of this case—is the definition of an ATDS. The TCPA defines an ATDS (or "autodialer") as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). As discussed *supra*, *Facebook, Inc. v. Duguid*, sheds light on what kind of equipment constitutes an ATDS.[3] In that case, the high Court clarified the statutory definition encompasses *only* those devices with "the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 1167. As such, Plaintiff must include some "factual content" showing

[3] District courts have already begun applying the narrow ATDS definition elucidated in *Facebook* in other TCPA cases, and in some instances have even narrowed it further. *See, e.g.*, *McEwen v. Nat'l Rifle Ass'n of Am. et al.*, 2021 U.S. Dist. LEXIS 72133, at *14 (D. Me. Apr. 14, 2021) ("After the *Duguid* opinion, the ATDS portion of the claim requires an allegation that [Defendant] used a random or sequential number generator to place a call to Plaintiff's cellphone, not merely a claim that its dialing system has that capability."). In addition, the U.S. Supreme Court has also recently vacated rulings from other circuits that adopted the broader definition of an ATDS. *See, e.g.*, *La Boom Disco, Inc. v. Duran*, __S. Ct. __, 2021 U.S. LEXIS 2021, at *1 (Apr. 19, 2021) ("[T]he judgment is vacated, and the case is remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of *Facebook*[.]").

NRSC used a random or sequential number generator to either "store" or "produce" the telephone number in question. *Iqbal*, 556 U.S. at 678. Plaintiff here has shown neither.

At the motion to dismiss stage, a plaintiff must properly allege sufficient facts that, taken as true, could lead to the reasonable inference NRSC used an ATDS to text Plaintiff. *Id*. "A plaintiff must provide at least some detail regarding the content of the messages or calls, thereby rendering the claim that an ATDS was used more plausible." *Zemel v. CSC Holdings LLC*, 2018 U.S. Dist. LEXIS 201917, at *9 (D.N.J. Nov. 29, 2018) (internal quotation omitted); *see also Trumper v. GE Cap. Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014) (conclusory allegations defendant placed calls using an ATDS fail under *Twombly/Iqbal*). For this reason, "speculative assertions without 'further factual enhancement' are insufficient to state a claim upon which relief can be granted." *Zelma v. Burke*, 2017 U.S. Dist. LEXIS 1209, at *11 (D.N.J. Jan. 4, 2017) (quoting *Iqbal*, 556 U.S. at 678). In this respect, Plaintiff has repeatedly failed to "nudge[] [his] claim[] across the line from conceivable to plausible," and thus, the *Second Amended Complaint* should be dismissed. *Twombly*, 550 U.S. at 570; *see also Mantha v. QuoteWizard.com, LLC*, 2020 U.S. Dist. LEXIS 45481, at *5 (D. Mass. Mar. 16, 2020) (same).

The *Second Amended Complaint* contains only "conclusory allegations" NRSC sent the texts in question and/or used an ATDS to do so. *See generally* ECF No. 24. While Plaintiff now identifies the content of each of the six alleged texts, his only purported "factual content" supporting the use of an ATDS are conclusory allegations that: (1) the texts appeared "impersonal, generic and obviously pre-written"; (2) the "relatively high volume of text messages despite the lack of consent or prior relationship"; (3) some of the texts were sent from a "toll-free number"; and (4) NRSC's website contains language for its opt-in messaging program that mentions "recurring autodialed marketing messages." *Id.* ¶¶ 46-54. These are "speculative assertions without

'further factual enhancement[s].'" *Zelma*, 2017 U.S. Dist. LEXIS 1209, at *11 (quoting *Iqbal*, 556 U.S. at 678). Plaintiff essentially asks this Court to take his word that NRSC used an ATDS; this Court should decline that invitation. The *Second Amended Complaint* infers only "the mere possibility of misconduct[,]" and therefore, falls short of the required Rule 8 pleading standard. *Iqbal*, 556 U.S. at 678. Each of Plaintiff's ATDS-based allegations are addressed in turn below.

**1. First Allegation: Texts Were Impersonal, Generic and Pre-written.**

Plaintiff claims that because the texts appear "impersonal" and "generic" that is sufficient to allege NRSC used an ATDS. ECF No. 24 ¶ 47. Plaintiff is wrong. To support this proposition, Plaintiff cites to two cases—one from Washington, the other from Delaware.[4] *Id.* (citing *Gragg v. Orange Cab Co.*, 942 F. Supp. 2d 1111 (W.D. Wash. 2013); *Davis v. D.R. Horton Inc.*, 2020 U.S. Dist. LEXIS 44977 (D. Del. Mar. 16, 2020)). These cases fall short for multiple reasons.

First, *Gragg* is a pre-*Facebook* case from a district court in the Ninth Circuit that advanced a broad ATDS definition of the kind rejected in *Facebook*. Notably, other courts within the Ninth Circuit have reached the opposite conclusion from *Gragg* regarding the value of "generic" or "impersonal" text messages as implying the use of an ATDS. *Armstrong v. Investor's Bus. Daily, Inc.*, 2018 U.S. Dist. LEXIS 216246, at *15-16 (C.D. Cal. Dec. 21, 2018) (holding that an allegation Plaintiff received a "generic and impersonal" text messages was not enough to "create an inference that an ATDS was in fact used"). The *Gragg* court also downplayed the importance of the *content* of the text as evidence an ATDS was used, opining instead that the focus should be on *how* the message was sent. 942 F. Supp. 2d at 1115 n.4 ("While these cases assuredly do not

[4] Oddly enough, Plaintiff's *Second Amended Complaint* cites several cases in the footnotes of various numbered paragraphs. ECF No. 24 ¶¶ 47 n.3; 48 n.4; 49 n.5; 50 n.6. For this reason, Defendant responds to those citations—many of which do not support Plaintiff's claim or even contradict it—as if he had asserted them in his forthcoming *Response* to this *Motion to Dismiss*.

hold that generic message content is necessary to infer an ATDS, such a hypothetical holding could not be justified in any event”). Indeed, several courts across the country have disregarded the purported “generic,” “impersonal,” or “commercial” nature of the subject text as being indicative of an ATDS, without more. *See, e.g., Mantha*, 2020 U.S. Dist. LEXIS 45481, at *4 (“Contrary to Mantha’s assertion, ‘commercial content’ does not, in and of itself, suggest use of an ATDS.”) (citing *Thomas v. Peterson’s Harley Davidson of Miami, LLC*, 363 F. Supp. 3d 1368, 1372 (S.D. Fla. 2018) (holding allegations that the text messages contained “commercial and generic content” only gave rise to a plausible inference of autodialing alongside additional “circumstances surrounding the text messages,” including “the messages’ ability to trigger an automated response by replying ‘Y,’ and that fact that ‘the messages were sent from a short code’”); *Serban v. CarGurus, Inc.*, 2016 U.S. Dist. LEXIS 122066, at *11 (N.D. Ill. Sept. 8, 2016) (concluding the “promotional and generic [] nature” of the text messages contributed to a plausible inference an ATDS was used where the complaint also alleged the defendant used “SMS shortcodes to transmit anywhere from hundreds of thousands to millions of text messages similar to the one [the plaintiff] received to other individuals”)); *see also Freidman v. Massage Envy Franchising, LLC*, 2013 U.S. Dist. LEXIS 84250, at *7-8 (S.D. Cal. June 13, 2013) (cited by Plaintiff, and holding “[p]laintiffs simply assert here that the text messages they received were impersonal, without additional factual details to show that an ATDS was used”).

Along those lines, it is noteworthy the plaintiff in *Davis* also alleged the use of a “vanity short code”—which some courts have found sufficient to indicate an ATDS. 2020 U.S. Dist. LEXIS 44977, at *3. Here, however, Plaintiff has not and cannot allege a short code was used. According to the *Second Amended Complaint*, every text received by Plaintiff originated from a

full, eleven-digit number (*i.e.*, a long code).[5] ECF No. 24 ¶¶ 25, 29, 32, 35, and 38; *Mantha*, 2020 U.S. Dist. LEXIS 45481, at *3 (allegations regarding use of "a long code does not . . . support a plausible inference that an ATDS was used.") (emphasis omitted). Further, the texts also originated from *different* phone numbers; Plaintiff has not alleged any of the numbers from which he received texts were registered to, or otherwise used by, Defendant. ECF No. 24 ¶¶ 25, 29, 32, 35, and 38.

**2. Second Allegation: Relatively High Volume of Text Messages.**

Plaintiff next claims the "high volume of text messages" also indicate NRSC used an ATDS. ECF No. 24 ¶ 48. As an initial matter, when presented with this exact question, the FCC recently opined that "[w]hether a certain piece of equipment or platform is an autodialer [does not] turn[] on . . . whether it can make a large number of calls in a short time." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 P2p All. Petition for Clarification*, 35 FCC Rcd. 6526, ¶ 9 (2020). Likewise, the FCC also found that just because texts were purportedly sent to a "large volume" of numbers that is "not probative" of whether the equipment constitutes an ATDS. *Id.* ¶ 3 ("By this Declaratory Ruling, we clarify that the fact that a calling platform or other equipment is used to make calls or send texts to a large volume of telephone numbers is not probative of whether that equipment constitutes an autodialer under the TCPA.").

This allegation also misses the mark for another reason: six messages in six weeks is *not* a "high volume" of texts. *Mantha*, 2020 U.S. Dist. LEXIS 45481, at *4 ("[T]he number, frequency, nature, and content of the two messages [over two consecutive days] alleged in the Complaint do

[5] "A short-code is a six-digit number that allows high-volume, application driver messaging . . . Long-codes are meant for person-to-person communications and can send only 1 message per record; short-codes can send 100 messages per second." *Barton v. Temescal Wellness, LLC*, 2021 U.S. Dist. LEXIS 42211, at *9 n.1 (D. Mass. Mar. 8, 2021) (citation omitted).

not give rise to a plausible inference of the use of an ATDS."); *cf. Brown v. Collections Bureau of Am., Ltd.*, 183 F. Supp. 3d 1004, 1006 (N.D. Cal. 2016) (denying motion to dismiss where plaintiff alleged sixteen phone calls and "internet complaints by *other* persons about calls from the same phone numbers") (emphasis in original). So too were the six text messages here also unique from one another. ECF No. 24 ¶¶ 25-42; *Freidman*, 2013 U.S. Dist. LEXIS 84250, at *7 (complaint did not state a plausible claim where texts "Plaintiffs present[ed] are similar in content, but differ[ed] enough to make it appear as if an ATDS was not utilized"); *cf. Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) (cited by Plaintiff, and observing "Gilliam received the *identical* text message multiple times . . . after specifically responding that he was not interested, which is indicative of the impersonal and automatic nature of the messages") (emphasis added).

Plaintiff also cites *Zemel v. CSC Holdings LLC*, 2018 U.S. Dist. LEXIS 201917, at *16 ("*Zemel II*"), from the District of New Jersey, to support this allegation. Again, as in *Davis*, and unlike here, the plaintiff in *Zemel II* specifically alleged the use of a short code. *Id.*

**3. Third Allegation: Some of the Texts Were from A "Toll-free Number," And Showed Signs of being from an "Institutional Sender."**

Plaintiff claims the use of a toll-free number in sending texts is a sign of an "institutional sender," and thus, indicative of an ATDS. ECF No. 24 ¶ 49. Plaintiff's *Second Amended Complaint* cites two pre-*Facebook* cases from California and Illinois as support. *Id.* (citing *Freidman*, 2013 U.S. Dist. LEXIS 84250; *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996 (N.D. Ill. 2014)). But again, neither case helps Plaintiff.

A careful review reveals these cases do not stand for the proposition Plaintiff asserts. In fact, the quote attributed to *Friedman* is nowhere in the opinion. *See generally Freidman,* 2013 U.S. Dist. LEXIS 84250, at *2. In *Freidman*, the court *dismissed* the plaintiff's case for not alleging

enough facts indicative of the use of an ATDS, and similarly held that claiming the texts in question were "generic and impersonal" was *insufficient* to allege the use of an ATDS. *Id.* at *6-7.

Aside from these unhelpful cases, Plaintiff fails to cite *any* authority establishing the presence of a toll-free number is indicative of the use of an ATDS. This is likely because a toll-free number is simply a number that can be purchased by any business or *individual* that simply shifts any associated long-distance charges from the caller to the recipient of a call. *See What Is a Toll-Free Number and How Does it Work?, Fed. Commc'ns Comm'n, available at* https://www.fcc.gov/consumers/guides/what-toll-free-number-and-how-does-it-work (last visited June 28, 2021). The use of a toll-free number is wholly irrelevant and not indicative of an ATDS.

**4. Fourth Allegation: NRSC's Website Mentions "Recurring Autodialed Marketing Messages" With Respect to Its Opt-in Messaging Program.**

Plaintiff claims his reference to certain language on Defendant's website about how an opting-in party can consent to receive autodialed messages sufficiently indicates Defendant used an ATDS. ECF No. 24 ¶¶ 50-52. As an initial matter, this Court already rejected this contention:

> Further, the NRSC's alleged use of 'recurring autodialed marketing messages' in its opt-in messaging program, see Am. Compl. ¶ 22, *does not necessarily mean that it uses an ATDS to communicate with parties, like Camunas, who did not consent to receive communications*.

ECF No. 21 at 14-15 (emphasis added). That Plaintiff would still retain this failed allegation in the *Second Amended Complaint*—despite this Court's clear guidance as to its worth—is startling.

Undeterred, Plaintiff identifies a recent District of New Jersey opinion, *Sieleman v. Freedom Mortgage Corp.*, which he misleadingly claims deemed similar language on a defendant's website a sufficient factual basis to assert an ATDS claim. ECF No. 24 ¶ 50 n.6. But the complaint in *Sieleman* included fact after fact supporting plaintiff's assertion the defendant used an ATDS to call him on at least four occasions. 2018 U.S. Dist. LEXIS 129698, at *2-3 (D.N.J. Aug. 2, 2018); Case No. 17-13110, ECF No. 1, (D.N.J. Dec. 14, 2017). Aside from the

website language, *Sieleman also* included: (1) an allegation that a "noticeable" and "artificial pause/delay" was heard on "approximately four (4) calls he answered"; (2) a job listing from defendant indicating they were "seeking employees that have autodialing experience"; and (3) a glassdoor.com review from a former employee discussing inbound sales leads coming from "an autodialer[.]" 2018 U.S. Dist. LEXIS 129698, at *3; Case No. 17-13110, Compl., ECF No. 1 ¶ 16.

Plaintiff cannot ask this Court to simply ignore his factual allegations whenever they cut the wrong way (*i.e.*, that he never opted-in to Defendant's text message program, *see* ECF No. 24 ¶¶ 21-22). Evidence that Defendant engages in a perfectly legal activity (like texting individuals who have opted-in to receive messages) cannot be sufficient evidence, without more, to indicate it used an ATDS to send *these* messages. *Davis*, 2020 U.S. Dist. LEXIS 44977, at *9 ("[J]ust because the complaint referred to the CallFire website does not mean that I have to accept as true all statements of the website pertaining to the functioning of CallFire's system" as potentially constituting an ATDS). Indeed, just weeks ago, another district court similarly opined that language from a defendant's internal documents that mentioned an "auto-dialer" was insufficient to hold that the software in question therefore qualified as an ATDS. *Timms v. USAA Fed. Sav. Bank*, 2021 U.S. Dist. LEXIS 108083, at *9-10 (D.S.C. June 9, 2021) ("[T]he court agrees with Defendant that the mere fact that its internal documents called the Aspect UIP an "auto-dialer" does not in and of itself impact whether Aspect UIP's functions actually qualify it as an ATDS pursuant to the statutory definition and [*Facebook*]."").[6] This claim cannot save Plaintiff.

---

[6] Plaintiff includes an unsupported argument that because one of the alleged messages was addressed to an individual named "Wilford," who might have been a subscriber under the opt-in program, that is indicative of an autodialer. ECF No. 24 ¶¶ 51-52. Aside from not citing a single case to support this proposition, it is also a simple legal conclusion for which Plaintiff includes no facts in support. The Court need not accept it as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, this personalized language to "Wilford" serves as proof the text in question were *not* as "impersonal" as Plaintiff claims, and that the number was not randomly or sequentially

**B. Even if Plaintiff Pleaded Sufficient Facts Indicating NRSC Used an ATDS, Plaintiff Pleaded Additional Facts Pertaining to NRSC's Dialing System That Foreclose His Claim Under Section 227(b).**

Should the Court determine Plaintiff's conclusory ATDS allegation is sufficient under Rule 8, the facts, taken as true, still fall outside of the definition of an ATDS as discussed in *Facebook*. As explained, to qualify as an ATDS, the system *must* have used a random or sequential number generator to either *produce* or *store* the number in question. *Facebook*, 141 S. Ct. at 1167.

*Facebook* involved a list of phone numbers Facebook uploaded into a system that in turn sent out text messages to the uploaded numbers. *Id*. The plaintiff in *Facebook* argued that the system's ability to automatically dial a list of uploaded numbers sufficed to meet the definition of an ATDS, even though a number generator was *not* used to produce or store the number in question. *Id.* The Supreme Court unanimously disagreed with the plaintiff and ruled that to qualify as an ATDS, a number generator *must* be used to either produce or store the operative number. *Id*. Thus, because the dialing system Facebook used to send the messages retrieved the numbers from a list they had uploaded (*i.e.*, it was neither stored nor produced using a random or sequential number generator), the Court held the system did *not* qualify as an ATDS as a matter of law. *Id*.

Here, Plaintiff makes the exact argument that the Supreme Court rejected in *Facebook*. In his *Second Amended Complaint*, Plaintiff stated: "Upon information and belief, Defendant uses dialing technology, which calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers." ECF No. 24 ¶ 59. Plaintiff used identical

---

generated. This too cuts against Plaintiff's misguided ATDS claim. *Snow v. GE*, 2019 U.S. Dist. LEXIS 99760, at *12-13 (E.D.N.C. June 14, 2019) ("Because plaintiff alleges that the text messages she received were intended for the prior owner or holder of her reassigned number, a targeted recipient, and because of the alleged content of the messages, it is not reasonable to infer that the messages were sent with equipment 'using a random or sequential number generator'.").

language in his *Amended Complaint*. *See* ECF No. 14 ¶ 30. This attempt by Plaintiff to bring his claim once again under the scope of the TCPA falls short and should no longer be permitted.

To be an ATDS, a random or sequential number generator must either produce or store numbers, neither of which were alleged by Plaintiff here. *Facebook*, 141 S. Ct. at 1167. Second, just like the plaintiff in *Facebook*, Plaintiff here alleges the list of phone numbers was already stored on the equipment, and then dialed using an ATDS. ECF No. 24, ¶ 59. Again, for a system to qualify as an ATDS, it *must* use a random or sequential number generator to either produce or store the number. *Facebook*, 141 S. Ct. at 1167. While a system might automatically dial a number, that alone does not qualify the system as an ATDS because a random or sequential number generator must also either produce or store the number in question. *Id.* Therefore, taking the instant allegations as true, Plaintiff, by specifically alleging the use of technology that is definitionally *not* an ATDS, has pleaded himself out of Court. *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (dismissal may be appropriate when "the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense") (citing *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006)); *see also DeCapua v. Metro. Prop. & Cas. Ins. Co.*, 2019 U.S. Dist. LEXIS 168061, at *4-8 (D.R.I. Sep. 30, 2019) (plaintiff alleged specific facts regarding the functioning of the dialing system used by the defendant that were incapable of meeting the definition of an ATDS; in so doing, plaintiff pleaded himself out of court).[7]

---

[7] In a case cited by Plaintiff, ECF No. 24 ¶ 47 n.3, this exact "pleading yourself out of court in a TCPA case" is addressed. *Davis*, 2020 U.S. Dist. LEXIS 44977, at *5. In discussing sufficient factual allegations to support the use of an ATDS, *Davis* held that if a TCPA plaintiff "alleged specific facts about the functioning of the [dialing] system used by the defendant, and those facts were incapable of meeting the definition of an ATDS under the statute and case law[,]" then that plaintiff would "plead himself out of court." *Id.* at *7. That is exactly what happened here as well.

This Court previously observed "it is unclear from the face of the Amended Complaint precisely how Camunas alleges the NRSC's system functions." ECF No. 21 at 15 n.4 (citing Am. Compl. ¶ 30)). Despite the opportunity to fix this error, Plaintiff did not revise this allegation to provide any clarity whatsoever. *Compare* ECF No. 14 ¶ 30 *with* ECF No. 24 ¶ 59. As shown, all Plaintiff's allegations underlying his "reasonable infer[ence]" that Defendant used an ATDS fail individually or collectively. But even if Plaintiff sought refuge in an obscure passage in the *dicta* of *Facebook*—as other plaintiffs have attempted to do based on allegations similar to those seen here—this too would not save his claim. For this additional reason, this case should be dismissed.

The recent case of *Hufnus v. Donotpay, Inc.*, 2021 U.S. Dist. LEXIS 118325 (N.D. Cal. June 24, 2021), in which the court granted defendant's motion to dismiss with prejudice, is instructive. Critically, plaintiff's complaint in *Hufnus* alleged only that "DoNotPay's platform . . . stores . . . numbers in a random and/or sequential way; uses a random and/or sequential generator to pull from the list of numbers to send targeted text messages; and uses a random and/or sequential generator to determine the sequence in which to send messages." *Id.* at *2. Notably absent, however, was an allegation the phone numbers were "identified in a random or sequential fashion." *Id.* For this reason, and based on *Facebook*, the court held defendant's system did "not qualify as an autodialer under the TCPA." *Id*. at *2; *see also Timms*, 2021 U.S. Dist. LEXIS 108083, at *10-11 ("[T]he automatic dialing capability alone is not enough to qualify a system as an ATDS. The system at issue must store numbers using a random or sequential number generator or produce numbers using a random or sequential number generator to qualify as an ATDS.") (cleaned up).

Here, the *Second Amended Complaint* suffers from the same deficiency—it does not allege NRSC's system stores or produces numbers in a "random or sequential" fashion. At best, Plaintiff alleges Defendant's "dialing technology" "calls phone numbers *from a stored list* using a random

or sequential number generator *to select* those phone numbers." ECF No. 25 ¶ 59 (emphasis added). Under *Facebook*, *Hufnus* and *Timms*, claims based on such an allegation cannot survive.[8]

**C. Plaintiff's Do-Not-Call Claim Under § 227(c) Also Fails to State a Claim.**

Plaintiff's *Second Amended Complaint* states, on multiple occasions, that he placed his number on the Federal Trade Commission's ("FTC") National Do-Not-Call ("DNC") Registry. ECF No. 24, ¶¶ 19-20, 22, 63, and 69. In so doing, Plaintiff alleges NRSC violated Section 227(c) by contacting him without consent, despite his number being on the DNC Registry. *Id.* ¶¶ 67-72. But political calls and messages—such as the texts in question here—are expressly "exempt[]" from restrictions regarding calls to those on the DNC Registry. In fact, the FTC has itself made this observation on its official website. *See The Do Not Call Registry, Fed. Trade Comm'n*, *available at* https://www.ftc.gov/news-events/media-resources/do-not-call-registry (last visited June 28, 2021) ("There are some exemptions to the Do Not Call rules. Because of the limits to

[8] Courts in the Third Circuit regularly dismiss complaints with prejudice for failure to properly state a claim in an amended pleading. *See, e.g.*, *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."); *Gibson v. Owens*, 2018 U.S. Dist. LEXIS 50419, at *10-11 (D.N.J. Mar. 27, 2018) ("In light of (a) the opportunity that has already been given to Plaintiff to submit an amended complaint that meets the requisite pleading standards, and (b) the Amended Complaint's failure to allege facts sufficient to survive [applicable statutory] review, the Court concludes that permitting further amendment as to the Individual Defendants would be futile. The Court hereby dismisses with prejudice the entirety of all claims against the Individual Defendants in the Amended Complaint."); *Humphreys v. PPL Elec. Utils. Corp.*, 2014 U.S. Dist. LEXIS 154819, at *6-7 (E.D. Pa. Oct. 30, 2014) ("An examination of the Amended Complaint in this matter reveals a complete lack of factual allegations from which a plausible claim for a violation of [statute] can be inferred[.] Accordingly, further amendment of the amended complaint would be futile and Plaintiffs' [] claims against all defendants are dismissed with prejudice."); *Payne v. DeLuca*, 2006 U.S. Dist. LEXIS 89251, at *85 (W.D. Pa. Dec. 11, 2006) ("[T]his Court explicitly pointed out Plaintiffs' shortcomings in pleading [the necessary elements] in the first amended complaint. Indeed, the failure to rectify those shortcomings was one of the reasons the Second Amended Complaint was dismissed with prejudice because the Court concluded Plaintiffs were unable or unwilling to do so.").

FTC's authority, *the Registry does not apply to political calls*[.]") (emphasis added). So too has the FCC—*i.e.*, the agency tasked with interpreting the TCPA, *see* 47 U.S.C. § 227(b)(2)—reached the same conclusion. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Rep. & Order, 18 FCC Rcd. at 14039-40 ¶ 37, 2003 WL 21517853, at *14 ("[C]alls that do *not fall within the definition of 'telephone solicitation'* as defined in section 227(a)(3) [now (a)(4)] will *not be precluded by the national do-not-call list*. These may include surveys, market research, *political* or religious speech calls.") (emphasis added). As the only circuit court to address this issue, the Tenth Circuit is in accord. *Mainstream Mktg. Servs. v. FTC*, 358 F.3d 1228, 1234 (10th Cir. 2004), *cert. denied*, 543 U.S. 812, 160 L. Ed. 2d 16, 125 S. Ct. 47, 2004 U.S. LEXIS 5564 (U.S. 2004) ("The national do-not-call registry's restrictions apply only to telemarketing calls made by or on behalf of sellers of goods or services, and *not* to charitable *or political fundraising calls*.") (citing 16 C.F.R. §§ 310.4(b)(1)(iii)(B), 310.6(a); 47 C.F.R. §§ 64.1200(c)(2), 64.1200(f)(9)) (emphasis added). There can be no doubt that if a call is political in nature, it cannot support a DNC claim.

In his *Second Amended Complaint*, Plaintiff pleaded "Defendant NRSC is a *political organization* that *raises money* for Republican Senatorial candidates[]"; it further sends messages to "prospective donors" seeking to "*raise money* for senate candidates[.]" ECF No. 24, ¶¶ 14-16 (emphasis added). Thus, taking these allegations as true, NRSC's texts are insufficient to state a DNC claim under Section 227(c) as a matter of law, as Plaintiff concedes they were "political."

## CONCLUSION

Due to Plaintiff's fundamental, incurable pleading deficiencies, he has failed to state a TCPA claim, and his *Second Amended Complaint* should be dismissed with prejudice.

Dated: June 29, 2021

*/s/Jeffrey N. Rosenthal*
**BLANK ROME LLP**
Jeffrey N. Rosenthal
One Logan Sq., 130 N. 18th St.
Philadelphia, PA 19103
Tel.: (215) 569-5553
Fax: (215) 832-5553
Rosenthal-j@BlankRome.com

-and-

**HOLTZMAN VOGEL BARAN TORCHINSKY JOSEFIAK PLLC**
Jason B. Torchinsky *(admitted pro hac vice)*
Jonathan P. Lienhard *(admitted pro hac vice)*
Dallin B. Holt *(admitted pro hac vice)*
15405 John Marshall Hwy
Haymarket, VA 20169

*Attorneys for National Republican Senatorial Committee*