IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROLANDO CAMUNAS, | : | CIVIL ACTION |
| | : | NO. 21-1005 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL REPUBLICAN SENATORIAL | : | |
| COMMITTEE, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    November 4, 2021

**I.    INTRODUCTION**

Plaintiff Rolando Camunas alleges that the National
Republican Senatorial Committee ("NRSC") violated sections
227(b) and 227(c) of the Telephone Consumer Protection Act
("TCPA") by sending him unsolicited text messages. See 47 U.S.C.
§ 227(b)(3), (c)(5). Presently before the Court is NRSC's motion
to dismiss his Second Amended Complaint for failure to state a
claim. See Fed. R. Civ. P. 12(b)(6). For the following reasons,
Defendant's motion will be granted.

**I.    BACKGROUND**

**A. Factual Background**

Rolando Camunas is a Philadelphia resident whose cell phone
number has been on the federal Do Not Call Registry since June
2015. NRSC is a political organization that raises money for

Republican senatorial candidates. Although Camunas never consented for NRSC to call or text him, he alleges that he received at least six text messages from NRSC in 2020. These messages are as follows:

1.   At approximately 2:00 PM on September 7, 2020, Camunas received the following message from toll-free number +1 (855) 265-3489: "It's Eric Trump. 5X-Matching is extended to 24HRS. We're just 57 days away from Election Day & need your help NOW to close the gap! http:/./teamtrump.co.l." When Camunas clicked on the link, he was directed to NRSC's website where donations were requested. Second Am. Compl. at ¶¶ 25-26.

2.   At approximately 6:43 PM on September 9, 2020, Camunas received the following message from toll-free number +1 (844) 264-7850: "Hi, you're listed as a Trump supporter who has NOT endorsed the President for 2020. If you stand with Trump, update your record: http:/.//nrsc.news/3v." The included link identified NRSC in the URL, and when Camunas clicked on the link, he was directed to NRSC's website. Id. at ¶¶ 29-30.

3.   At approximately 1:57 PM on September 10, 2020, Camunas received the following message from toll-free number +1 (844) 264-7946: "Pres Trump is rallying in Michigan TONIGHT! You only have a few hrs left to submit your

official   endorsement   for   2020.   Act   now   ->
http:/./bit.ly.2rc8bK." When Camunas clicked on the
link, he was directed to NRSC's website. Id. at ¶¶ 32-
33.

4.     At approximately 1:57 PM on September 12, 2020, Camunas
received the following message from toll-free number +1
(855) 264-7896: "ALERT: Pres. Trump & Sleepy Joe are
neck-and-neck. We need YOU! Sign the 2020 pledge to VOTE
TRUMP   to   help   our   President   WIN:
http:/./bit.ly/2DSuTo1." When Camunas clicked on the
link, he was directed to NRSC's website. Id. at ¶¶ 35-
36.

5.     At approximately 5:57 PM on September 15, 2020, Camunas
received the following message from toll-free number +1
(844) 605-3489: "Did you see Eric Trump's text[?] We
still need YOU to complete your pledge to VOTE TRUMP!
The   deadline   is   tonight.   Add   your   name:
http://teamtrump.co/3q." When Camunas clicked on the
link, he was directed to NRSC's website. Id. at ¶¶ 38-
39.

6.     At approximately 7:12 PM on October 16, 2020, Camunas
received the following message from (936) 249-9558:
"Sorry for bugging you, Wilford. This deadline is vital.
If you give $15 we can cat[c]h Biden, Schumer & the Dems!

3

If not, we lose. 6x now: trump-team.com/nnz." Camunas
alleged that he has never gone by "Wilford." Like before,
when he clicked on the link, he was directed to NRSC's
website. <u>Id.</u> at ¶¶ 41-43.

Camunas additionally alleges that NRSC's website states that
its opt-in messaging program communicates using "recurring
autodialed marketing messages." <u>Id.</u> at ¶ 50.

Camunas alleges that NRSC violated sections 227(b) and
227(c) of the TCPA. "Congress passed the TCPA to address 'the
proliferation of intrusive, nuisance calls' to consumers and
businesses from telemarketers." <u>Facebook, Inc. v. Duguid</u>, 141 S.
Ct. 1163, 1167 (2021) (quoting note following 47 U.S.C. § 227).
Section 227(b) of the Act prohibits making certain calls "using
any automatic telephone dialing system" without "the prior
express consent of the called party." <u>See</u> 47 U.S.C. §
227(b)(1)(A). Section 227(c)(5) creates a private right of
action for "[a] person who has received more than one telephone
call within any 12-month period by or on behalf of the same
entity in violation of the regulations prescribed" under the
subsection, which governs the Do Not Call Registry. <u>See</u> 47
U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d).

**B. Procedural History**

Camunas filed the instant action in March 2021. On April
2, 2021, NRSC moved to dismiss the Complaint for lack of

4

standing and failure to state a claim. In lieu of opposing NRSC's motion, Camunas filed an Amended Complaint (the "First Amended Complaint"). On April 30, 2021 NSRC moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

The Court issued its opinion on May 27, 2021, granting NRSC's motion to dismiss pursuant to Rule 12(b)(6), but denying the Motion pursuant to Rule 12(b)(1). Camunas v. Nat'l Republican Senatorial Comm., No. 21-1005, 2021 WL 2144671, at *7 (E.D. Pa. May 26, 2021) (ECF No. 21). With respect to section 227(b), the Court found that Camunas failed to plausibly allege that NSRC sent the text messages at issue and that NSRC used an automatic telephone dialing system ("ATDS") as required under the statute. Id. at *4, *6. With respect to section 227(c), the Court found that Camunas failed to plausibly allege that NRSC sent the messages at issue. Id. at *6. The Court dismissed the First Amended Complaint without prejudice and granted Camunas leave to amend the First Amended Complaint.

Camunas again amended his complaint (the "Second Amended Complaint") on June 15, 2021. On June 29, 2021 NRSC filed another motion to dismiss pursuant to Rule 12(b)(6). NRSC claims Camunas's Second Amended Complaint failed to address shortcomings identified in the Court's previous opinon. Camunas filed an opposition to NRSC's pending Motion on July 13, 2021.

On September 16, 2021, the Court ordered supplemental briefing
on the issue of whether section 227(c), which the parties have
submitted, would violate the First Amendment if applied to
political organizations. NRSC's motion is now ripe before the
Court.

## II.  LEGAL STANDARD

A party may move to dismiss a complaint for failure to
state a claim upon which relief can be granted. Fed. R. Civ. P.
12(b)(6). When reviewing such a motion, the Court is "required
to accept as true all allegations in the complaint and all
reasonable inferences that can be drawn from [the allegations]
after construing them in the light most favorable to the non-
movant." Conard v. Pa. State Police, 902 F.3d 178, 182 (3d Cir.
2018) (quoting Jordan v. Fox, Rothschild, O'Brien & Frankel, 20
F.3d 1250, 1261 (3d Cir. 1994)).

However, "the tenet that a court must accept as true all of
the allegations contained in a complaint is inapplicable to
legal conclusions. Threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not
suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To
survive a motion to dismiss for failure to state a claim, a
complaint must "contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its

face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

**III. DISCUSSION**

    **A. Section 227(b)**

NRSC argues the Second Amended Complaint still fails to state a claim under section 227(b) of the TCPA, which requires a plaintiff to establish that "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." <u>Smith v. Vision Solar LLC</u>, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (quoting <u>Zemel v. CSC Holdings, LLC</u>, No. 18-2340, 2018 WL 6242484, at *3 (E.D. Pa. Sept. 21, 2020)).[1] The parties do not dispute that Camunas plausibly alleged he did not consent to receiving the messages. Like in its prior motion to dismiss, NRSC argues that Camunas has failed to sufficiently allege that NRSC used an ATDS to send the messages at issue.

        1. <u>Whether Camunas Sufficiently Pleaded NRSC used an ATDS</u>

The TCPA defines an ATDS as a piece of equipment with the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such

---

[1]    The parties do not dispute that this prohibition also applies to unsolicited text messages. In <u>Facebook, Inc. v. Duguid</u>, the Supreme Court "assume[d] that it does without considering or resolving that issue." 141 S. Ct. at 1168 n.2.

numbers." 47 U.S.C. § 227(a)(1). In <u>Facebook, Inc. v. Duguid</u>, the Supreme Court held that to qualify as an ATDS, "a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." 141 S. Ct. at 1167.

To satisfy the ATDS element of the section 227(b) cause of action, "courts permit the allegation of an automatic system to be pled on information or belief, but require additional factual information, such as the absence of a relationship between the parties and the random nature of the automation device." <u>Zemel</u>, 2018 WL 6242484, at *3 (quoting <u>Norman v. Sito Mobile Sols.</u>, No. 17-2215, 2017 WL 1330199, at *3 (D.N.J. Apr. 6, 2017)). "[A] bare allegation that defendants used an ATDS is not enough." <u>Id.</u> (collecting cases). Instead, "[a] plaintiff must provide 'at least some [ ] detail regarding the content of the messages or calls, thereby rend[ering] the claim that an ATDS was used more plausible.'" <u>Id.</u> (second alteration in original) (quoting <u>Aikens v. Synchrony Fin. d/b/a Synchrony Bank</u>, No. 15-10058, 2015 WL 5818911, at *3 (E.D. Mich. July 31, 2015)), <u>report and recommendation adopted sub nom. Aikens v. Fin.</u>, No. 15-10058, 2015 WL 5818860 (E.D. Mich. Aug. 31, 2015)).

In its prior order, the Court concluded that the First Amended Complaint did not plausibly allege that NRSC used ATDS

8

to send messages at issues because Camunas only alleged that the messages were "generic and obviously prewritten," that NRSC's website describes using "'recurring autodialed marketing messages' in its opt-in messaging program," and "[u]pon information and belief, Defendant uses dialing technology, which calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers." Camunas, 2021 WL 2144671, at *6 (citing First Am. Compl. ¶¶ 21-22, 30). The Court held that "[t]he pleading does not identify the specific content of the messages, nor does it identify the phone number from which the messages were sent or indicate whether that number was a short code." Id. The Court found that "[the First] Amended Complaint also contains no allegations about whether Camunas had a prior relationship with NRSC" and the "NRSC's alleged use of 'recurring autodialed marketing messages' in its opt-in messaging program . . . does not necessarily mean that it uses an ATDS to communicate with parties, like Camunas, who did not consent to receive communications." Id. (internal citation omitted).

In his Second Amended Complaint, Camunas alleges that he received a "high volume of text messages from NRSC despite the lack of consent or prior relationship" with NRSC. Second Am. Compl. at ¶ 48. Camunas specifies the date of when he received six messages from NRSC and provides the specific content of

those messages along with the number associated with the sender.
Second Am. Compl. ¶ 25, 29, 32, 35, 38, 41. For example, on
September 9, 2020 Camunas received a message from alleged toll-
free number 1-844-264-7589 that read "Hi, you're listed as a
Trump supporter who has NOT endorsed the President for 2020. If
you stand with Trump, update your record: http://nrsc.news/3v."
Second Am. Compl. at ¶ 29.

In its present motion, NRSC contends that Camunas still
fails to state a claim under Rule 12(b)(6). NRSC does not
contest that Camunas's Second Amended Complaint sufficiently
alleges NRSC sent the messages at issue. Instead, NRSC argues
that Camunas still fails to sufficiently allege that NRSC used
an ATDS to send the messages. As the Second Amended Complaint
includes the content of the messages Camunas received, the
relevant phone numbers, and his lack of relationship with NRSC,
the central question for the Court to consider is whether
Camunas's allegations create an inference that NRSC used an
ATDS.

Like in his First Amended Complaint, Camunas still alleges
that NSRC uses "dialing technology, which calls phone numbers
from a stored list using a random or sequential number generator
to select those phone numbers." Second Am. Compl. ¶ 59. For
support, Camunas alleges that most of the text messages Camunas
"received from the NRSC appear to have been sent from toll-free

numbers" and "[j]ust as messages sent from short-code numbers create an inference that messages were sent out *en masse*, that same inference can be drawn from the use of toll-free numbers; organizations use toll free numbers when engaging in a high-volume of interactions and communications." Id. at ¶ 49.[2] NSRC argues that Camunas is unable to cite any authority "establishing the presence of a toll-free number is indicative of the use of an ATDS" which is "likely because a toll-free number is simply a number that can be purchased by any business or *individual* that simply shifts any associated long-distance charges from the caller to the recipient of a call." Defs.' Mot. to Dismiss at 11 (emphasis in original), ECF No. 25-1.

However, the Court need not consider whether use of six different toll-free numbers alone is sufficient to establish an inference that the defendant used an ATDS to survive the motion to dismiss stage. Here, Camunas has otherwise failed to sufficiently plead that NRSC used an ADTS.

As noted, pursuant to Facebook, to qualify as an ATDS, the "device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator."

---

[2]   Camunas alleges the messages Camunas came from the following numbers: "1 (855) 265-3489;" "1 (844) 264-7589;" "1 (844) 264-7946;" "1 (855) 264-7896;" "1 (844) 605-3489;" "936-249-9558." Id. at ¶ 25, 29, 32, 35, 38, 41.

141 S. Ct. at 1167. Camunas alleges that NRSC "uses dialing technology which calls phone numbers from a <u>stored list</u> . . . ." Second Am. Compl. at ¶ 59 (emphasis added). Camunas additionally alleges that "the volume of text messages Plaintiff received from the NRSC despite never consenting to receive calls/texts from the NRSC, coupled with the fact that Plaintiff received a text addressed to someone named 'Wilford' leads Plaintiff to believe Defendant incorrectly classified him as a subscriber named 'Wilford.'" Second Am. Compl. at ¶ 51. And because "Defendant appears to have classified Plaintiff's number as belonging to a subscriber named 'Wilford', Plaintiff reasonably believes that Defendant sent him texts using an ATDS." <u>Id.</u> at ¶ 52.

Thus, from the face of Camunas's complaint, Camunas's theory is that Camunas's number was previously stored in NRSC's system, which led NRSC to incorrectly classify Camunas as a subscriber. As a result, NRSC then sent Camunas pre-scripted messages. Thus, Camunas does not allege that a random or sequential number generator produced or stored numbers, but instead alleges that the phone numbers were <u>already stored</u> on the device prior to the messages being sent.[3]

---

[3]     Though Camunas pleads that NRSC's website states that its opt-in messaging program communicates using "recurring autodialed marketing messages," Second Am. Compl. at ¶ 50, the Court has already found that "NRSC's alleged use of 'recurring

12

This is precisely the type of allegation rejected by the Supreme Court in Facebook. In Facebook, the plaintiff initially "stated a claim under the TCPA by alleging that Facebook's notification system automatically dialed stored numbers." 141 S. Ct. at 1168. The Court held that because "Facebook's notification system neither stores nor produces numbers 'using a random or sequential number generator,' it is not an autodialer." Id. (emphasis added). As NRSC notes, "[a]t best, Plaintiff alleges Defendant's 'dialing technology' 'calls phone numbers *from a stored list* using a random or sequential number generator *to select* those phone numbers.'" Def.'s Mot. to Dismiss at 15-16, ECF No. 25-1 (citing Second Am. Compl. at ¶ 59).

In the cases following Facebook, courts in other jurisdictions have emphasized that "[t]he system at issue must store numbers using a random or sequential number generator." Timms v. USAA Fed. Sav. Bank, No. 3:18-cv-01495-SAL, 2021 WL 2354931, at *9-10 (D.S.C. June 9, 2021) (emphasis added); see also Hufnus v. Donotpay, Inc., No. 20-0701, 2021 WL 2585488, at *1-*2 (N.D. Cal. June 24, 2021) (finding that a platform does

---

autodialed marketing messages' in its opt-in messaging program . . . does not necessarily mean that it uses an ATDS to communicate with parties, like Camunas, who did not consent to receive communications." Camunas, 2021 WL 2144671, at *6 (internal citation omitted).

not qualify as an autodialer because it dialed numbers from a list that were created in a "non-random, non-sequential way.").

Camunas argues that NRSC's interpretation of <u>Facebook</u> is erroneous. Camunas cites to a footnote from the <u>Facebook</u> that reads "[f]or instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." 141 S. Ct. at 1172 n.7. However, Camunas's reliance is misplaced.

Following <u>Facebook,</u> courts in other jurisdictions have explained the Supreme Court relied on "an amicus curiae brief from the Professional Association for Customer Engagement for support" of the footnote which "makes clear that the 'preproduced list' of phone numbers referenced in the footnote was itself created through a random or sequential number generator, differentiating it from [a] 'preproduced list' of phone numbers" that were provided by individuals. <u>Hufnus</u>, 2021 WL 2585488, at *2; <u>see</u> <u>Borden v. eFinancial, LLC</u>, No. C19-1430, 2021 WL 3602479, at *5 (W.D. Wash. Aug. 13, 2021) (explaining that the amicus brief "makes clear that the preproduced list of phone numbers referenced in footnote 7 was itself created through a random or sequential number generator, thus differentiating it from the stored list of consumer provided phone numbers"); <u>see also</u> <u>Tehrani v. Joie de Vivre Hosp., LLC</u>,

14

No. 19-08168, 2021 WL 3886043, at *5-*6 (N.D. Cal. Aug. 31, 2021) (same); Barry v. Ally Fin., Inc., No. 20-12378, 2021 WL 2936636, at *6 (E.D. Mich. July 13, 2021) (same). Thus, if the preproduced list was not created through a random or sequential number generator, it does not meet the Facebook standard of an ADTS.

Here, it is clear that Camunas's argument is premised on the notion that he received messages because his number was previously stored by NRSC. Camunas does not allege that his number was stored after it was generated by a random or sequential number generator. Thus, Camunas has not pleaded facts sufficient to support a reasonable inference that NRSC used a device that had "the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." Facebook, 141 S. Ct. at 1167; accord Deleo v. Nat'l Republican Senatorial Comm., No. 21-03807, 2021 U.S. Dist. Lexis 210858, at *19 (D.N.J. Nov. 1, 2021) ("According to the Supreme Court, merely alleging the defendant used a system that automatically dials phone numbers from a stored list does not meet the definition of an ATDS under the TCPA as contemplated by Congress.").[4]

---

[4]    In Dutcher v. NewRez LLC, Judge Kearney recently permitted a section 227(b) claim to go forward finding that at the motion to dismiss stage, the plaintiff pled sufficient facts to support his allegation that the defendant used an ATDS. No. 21-02062, at

Though Camunas cites several post-Facebook decisions that
he purports support his position, these cases merely indicate
that discovery may be needed to determine whether an ADTS may be
used. See Carl v. First Nat'l Bank of Omaha, No. 2:19-cv-00504,
2021 WL 2444162, at *9 n.10 (D. Me. June 15, 2021); Atkinson v.
Pro Custom Solar LCC, No. SA-21-CV-178, 2021 WL 2669558, at *1
(W.D. Tex. June 16, 2021); see also Tehrani, 2021 WL 3886043, at
*6 (noting that Carl and Atkinson "simply indicate that
discovery may be needed to determine whether the defendant uses
an autodialer").[5] Unlike those cases, Camunas's allegations

---

*7-*8 (E.D. Pa. Nov. 3, 2021). In Dutcher, the plaintiff alleged
that he received a pre-recorded voice message "after hearing a
pause of dead air followed by a click." Id. at *3. Judge Kearney
explained that he is persuaded by a recent opinion from Judge
Schiller that gave "deference to a pleading which identified a
distinctive pause at the beginning of repeated calls" as this
allowed the court to infer the defendant had used an ADTS. Id.
at *6 (citing Stewart v. Direct Building Supplies, LLC, No. 20-
3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021)). This case
is distinguishable from Dutcher as it involves text messages
rather than voice messages. Camunas makes no allegations that he
received repeated calls with a distinctive pause before each.
Further, Judge Kearney notes that the plaintiff in Dutcher
vehemently denied that his phone number was already stored in
the defendant's system, making it plausible that the defendant's
system had the capacity to store or produce a telephone number
using a random or sequential number generator. Id. at *7-*8.
Here, as noted, Camunas's allegations are premised on the theory
that his number had already been stored by NRSC. Thus, Dutcher
is inapplicable here.

[5]   For support Camunas relies heavily on Gross v. GG Homes,
Inc., which initially denied defendant's motion to dismiss a
section 227(b) claim reasoning that "[p]laintiff need not
include additional details concerning the process by which
[d]efendant's device stores and produces numbers" as the

render it implausible that Defendant used a device that meets
Facebook's definition of an ADTS. Thus, his section 227(b) claim
must be dismissed. See Guglielmo v. CVS Pharmacy, Inc., No. 20-
1560, 2021 WL 3291532, at *2 (D. Conn. Aug. 2, 2021) (granting
the defendant's motion to dismiss in part because the plaintiff
failed to allege "that his number was stored or produced with a
random or sequential number generator").

Accordingly, NRSC's motion to dismiss with respect to
Camunas's Section 227(b) claim will be granted.

### b. Subsection 227(c)

To bring forward a claim for violation of 47 U.S.C. §
227(c)(5), Camunas needs to establish that: (a) he received
multiple calls within twelve months, (b) by or on behalf of the
same entity, (c) on a residential phone registered on the Do Not
Call list. Smith v. Vision Solar LLC, No. 20-2185, 2020 WL
5632653, at *3 (E.D. Pa. Sept. 21, 2020) (citing Huber v. Pro
Custom Solar, LLC, No. 19-01090, 2020 WL 2525971, *2 (M.D. Pa.
May 18, 2020)).

---

"[p]laintiff need not describe the technical details of
[d]efendant's alleged ATDS at" the motion to dismiss stage. No.
21-00271, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021)
(overruled by Gross v. GG Homes, Inc., No. 21-00271, 2021 WL
4804464 (S.D. Cal. Oct. 14, 2021)). Though not noted by Camunas,
the Gross court ultimately reconsidered this ruling, finding
that the nature of Plaintiff's allegations "render[ed]
implausible the allegation that Defendant sent the texts using
an ATDS . . . ." Gross, 2021 WL 4804464 *3. Thus, Plaintiff's
reliance on Gross is misplaced.

The Court previously held that Camunas's section 227(c) claim fails because he did not plausibly allege that NRSC sent the messages at issue. See Camunas, 2021 WL 2144671, at *7. More specifically, the Court noted that Camunas cannot claim that NRSC sent the messages or that the messages were sent on NRSC's behalf, given he did not include allegations about the content of the messages or phone number from which they were sent.

Here, NRSC does not contest that the messages were sent by NRSC. Instead, NRSC argues that the Do Not Call List does not, and was never intended to, include messages related to political fundraising, such as the messages at issue here, and even if it did, it would be deemed unconstitutional under the First Amendment.[6]

### 1. The Do Not Call List and the TCPA

NRSC argues that political fundraising calls generally do not fall under the purview of the Do Not Call list. According to NRSC, because the private right of action only applies when

---

[6]   Camunas argues that NSC's argument is not ripe because NRSC has not filed a notice of a constitutional question with the Attorney General of the United States pursuant to Federal Rules of Civil Procedure 5.1(a). Pursuant to this rule, "the attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier" but "[b]efore the time to intervene expires, the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional." Fed. R. Civ. P. 5.1(c). Because the Court need not reach the issue of whether section 227(c) is unconstitutional, as explained below, the question need not be certified with the Attorney General.

entities are on the Do Not Call list, the private right of action cannot apply to political organizations that are excluded from the purview of the Do Not Call list.

The TCPA itself did not create the Do Not Call List. The statute authorized the Federal Communications Commission to create a "single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3); see also Mainstream Mktg. Servs., Inc. v. F.T.C., 358 F.3d 1228, 1235 (10th Cir. 2004) (noting that the TCPA "authorized the FCC to establish a national database of consumers who object to receiving 'telephone solicitations,' which the act defined as commercial sales calls.").

NRSC points to the TCPA's legislative history to support its argument. NRSC explains that in 2003, Congress created the Do-Not-Call Implementation Act which directed the FCC to coordinate with the Federal Trade Commission (the "FTC") to create a uniform do-not-call list. See 15 U.S.C. § 6153. The legislative history of this Act provides that "[e]xemptions exist for established business relationships and tax-exempt non-profit organizations, such as those of a charitable or political nature." COMM. ON ENERGY AND COMMERCE, H.R. Rep. No. 108-8, at 2 (2003).

For further support, NRSC points to the FTC and FCC's regulations regarding the Do Not Call list.[7] Significantly, the FCC's regulations regarding implementing the TCPA, which were published after the enactment of the Do Not Call Implementation Act,[8] state that "calls that do not fall within the definition of 'telephone solicitation'" in the TCPA "will not be precluded by the national do-not call list." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Rep. & Order, 18 FCC Rcd. 14014, at 14039-40 ¶ 37 (2003), 2003 WL 21517853, at *14. "These may include surveys, market research, political or religious speech." Id. (emphasis added).[9]

_____

[7]     The FTC's website states: "There are some exemptions to the Do Not Call rules. Because of the limits to FTC's authority, the Registry does not apply to political calls or calls from non-profits and charities (but the Registry does cover telemarketers calling on behalf of charities)." The Do Not Call Registry, Federal Trade Commission, https://www.ftc.gov/news-events/media-resources/do-not-call-registry (last visited May 17, 2021).

[8]     In 2007, Congress passed the Do Not Call Improvement Act which implemented some amendments to the Do Not Call Implementation Act. See Pub. L. 110-87.

[9]     It must be noted that section 227(c)(5), which creates the private right of action, uses the term "telephone call" instead of "telephone solicitation." Section 227(c) provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action. 42 U.S.C. 277(c)(5) (emphasis added). Though the language of the statute initially refers to "telephone call[s]," the same subsection allows for an affirmative defense with respect to "telephone solicitations." "Telephone solicitations" has an explicit definition under the statute and would appear to be more restrictive than "telephone

calls." Thus, a key question is whether section 227(c) creates a
private right of action for a person who receives "telephone
call[s]" generally or "telephone solicitations" as defined by
the statute.

Generally, "identical words used in different parts of the
same act are intended to have the same meaning." <u>Sullivan v.
Stroop</u>, 496 U.S. 478, 484 (1990) (quoting <u>Sorenson v. Sec'y of
Treasury</u>, 475 U.S. 851, 860 (1986)). Here, "telephone calls" is
not defined in the statute and thus ambiguous and there is a
statutory gap that must be addressed. "When Congress fails to
define potentially ambiguous statutory terms, it effectively
delegates to federal judges the task of filling gaps in a
statute." <u>U.S. v. Santos</u> 533 U.S. 507, 524 (2008) (Stevens, J.,
concurring). Generally, "[a] provision that may seem ambiguous
in isolation is often clarified by the remainder of the
statutory scheme-because the same terminology is used elsewhere
in a context that makes its meaning clear, or because only one
of the permissible meanings produces a substantive effect that
is compatible with the rest of the law." <u>United Sav. Ass'n of
Texas v. Timbers of Inwood Forest Assocs., Ltd.</u>, 484 U.S. 365,
371 (1988) (internal citation and quotation marks omitted).

Congress did not define "telephone call" in the statute,
nor does the legislative history suggest a specific meaning.
Here, it appears that Congress intended for the private right of
action to apply to persons who have received "telephone
solicitations" rather than general "telephone calls." Though, on
its face, "telephone call" and "telephone solicitation" differ,
subsection 227(c)(5)(C) provides that "[i]t shall be an
affirmative defense in any action brought under this paragraph
that the defendant has established and implemented, with due
care, reasonable practices and procedures to effectively
prevent <u>telephone solicitations</u> in violation of the regulations
prescribed under this subsection." 47 U.S.C 227(c)(5)(C)
(emphasis added). It would be incongruous for the affirmative
defense to apply only to "telephone solicitations" if the
private right of action were to apply to "telephone calls"
generally. Further, section 227(c)(1) sought to create a "Do Not
Call" system to prevent "telephone solicitations," and, as
previously noted, the legislative history provides that the Do
Not Call list should only apply to "telephone solicitations."
COMM. ON ENERGY AND COMMERCE, H.R. Rep. No. 108-10, at 2 (2003).
Thus, it would only make sense that the private right of action
were to apply to "telephone solicitations" rather than
"telephone calls" generally.

The TCPA defines "telephone solicitation" as including "a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4). The statute specifically provides the "telephone solicitation" "does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." Id; see also 47 C.F.R. 64.1200(f)(15) (Federal Communication Commission's definition of "telephone solicitation" is the same). NRSC argues that the definition "tax exempt nonprofit organization" under section 227(a) includes both charitable and political organizations.

For additional support, NRSC points to the legislative history of the TCPA. The TCPA was referred to the House Committee on Energy and Commerce (the "Committee"). The Committee's report explained that "[t]o come within the definition [of telephone solicitation], a caller must encourage a commercial transaction" and the Committee "does not intend the term 'telephone solicitation' to include public opinion polling, consumer or market surveys, or other survey research conducted by telephone." COMM. ON ENERGY AND COMMERCE, H.R. Rep. No. 102-317, at 13 (1991). With respect to tax-exempt charitable

organizations, the legislative history explains that "[t]he Committee made the public policy determination to exclude calls made by charitable or political organizations on the basis of the record, which does not contain sufficient evidence to demonstrate that calls made from these tax exempt nonprofit organizations should be subject to the restrictions provided for under the bill" as "the record suggests that most unwanted telephone solicitations are commercial in nature." Id. at 16.

The Committee's analysis then explains "to allow for the possibility that charitable or political calls might . . . represent as serious a problem as commercial solicitations" the Commission was directed "to consider whether there was a need for additional authority to further restrict telephone solicitations" and if needed "to propose specific restrictions to the Congress." Id. at 16-17. The Committee noted that it "was sensitive to restraints on its authority to regulate the speech of charitable and political organizations, speech with the Supreme Court has identified as 'core' First Amendment Speech." Id. at 17. The Committee found that "solicitations by [tax-exempt charitable and political] organizations were less of a problem than commercial calls. It is on this basis that the Committee believes that the scope of the regulation is a workable 'commercial speech' distinction consistent with Supreme Court precedent." Id. Thus, the legislative history supports the

conclusion that the TCPA intended to exclude tax-exempt political organizations from the Do Not Call list.

The parties do not contest that NRSC is a tax-exempt political organization. Instead, Camunas attempts to create a distinction between (1) general political messages and (2) political messages that request donations. Camunas concedes that general political messages from political organizations, such as "remember to vote on Tuesday," are allowed under the statute. Camunas argues that political calls requesting donations constitute "sales pitches" that are not exempt from the Do Not Call list and section 227(c).[10]

Camunas argues that prohibiting political organizations from soliciting donations is a content-neutral time place and

---

[10]     For additional support, Camunas points to the recent Supreme Court case Barr v. Am. Ass'n of Political Consultants, Inc., 140 S. Ct. 2335, 2343 (2020). In Barr, the Court considered a 2015 amendment to the TCPA that, pursuant to section 227(b), allowed robocalls made to be made to collect government debt. 140 S. Ct. 2335, 2343 (2020). The Court struck this amendment down finding it to be unconstitutional because it favored such robocalls over political and other speech. Id. at 2344. The Supreme Court recognized that under section 227(b) of the TCPA, political and nonprofit organizations "still may not make political robocalls to cellphones . . . ." Id. However, the same restriction does not appear under section 227(c). Barr involved only section 227(b), which does not contain the term "telephone solicitation." Thus, Barr is not applicable to Camunas's claim which involves section 227(c). See Deleo, 2021 U.S. Dist. Lexis 210858, at *22 (finding the plaintiff's reliance on Barr misplaced because the issues in Barr "concerned a § 227(b) claim, and the Supreme Court did not address § 227(c) claims or the Do-Not-Call Registry.").

manner restriction on speech that is "narrowly tailored to serve the government's legitimate, content-neutral interests" and it "leave[s] open ample alternative channels for communications." Brown v. Cty. Of Pittsburgh, 586 F. 3d 263, 271 (3d Cir. 2009) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 798 (1989)); see also Hill v. Colorado, 530 U.S. 703, 719 (2000).

However, Camunas does not provide how either the statutory text or legislative history distinguishes between general political messages and messages requesting donations. To the contrary, the legislative history makes it clear that the statute sought to exclude calls from tax-exempt political organizations generally. See Mainstream Mktg. Servs., 358 F.3d at 1234 ("[t]he national do-not-call registry's restrictions apply only to telemarketing calls made by or on behalf of sellers of goods or services, and not to charitable or political fundraising calls."); Deleo, 2021 U.S. Dist. Lexis 210858, at *21 (holding the plaintiff could not maintain a claim under section 227(c) of the TCPA because "political organizations are exempt from the Do-Not-Call Registry's restrictions"); Libby v. Nat'l Republican Senatorial Comm., No. 5:21-cv-197, 2021 WL 4025798, at *4 (W.D. Tex. July 27, 2021) (dismissing a section 227(c) claim because "political organizations are exempt from the Do Not Call Registry"). Because Camunas is unable to point to any authority to support his argument that the TCPA's

definition of "telephone solicitations" distinguishes between general political messages and political messages that request fundraising, Camunas's argument fails. Therefore, the Court need not consider whether section 227(c) would be unconstitutional if applied to political fundraising calls.

Accordingly, NRSC's motion with respect to Camunas's section 227(c) claim will be granted.

### IV.  CONCLUSION

For the foregoing reasons, NRSC'S motion to grant Camunas's section 227(b) and 227(c) claims will be granted. Given the fundamental flaws in Camunas's Second Amended Complaint, any further amendment to the Second Amended Complaint would be futile. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."). As a result, the Court will dismiss the Second Amended Complaint with prejudice.

An appropriate order will issue.